**LANSING BROADCASTING COMPANY, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 20009.**

United States Court of Appeals, Sixth Circuit.

June 5, 1970.

William D. Hoops, Detroit, Mich., for petitioner-appellant; Frank H. Boyer, Evans, Boyer, Luptak & Briggs, Detroit, Mich., on the brief.

Janet R. Spragens, Dept. of Justice, Washington, D. C., for respondent-appellee; Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Gilbert E. Andrews, Attys., Dept. of Justice, Washington, D. C., on the brief.

Before WEICK, EDWARDS and COMBS, Circuit Judges.

WEICK, Circuit Judge.

The sole issue in this appeal is whether the taxpayer's right to be taxed as a "small business corporation" under Subchapter S of the Internal Revenue Code of 1954 (26 U.S.C. §§ 1371–1378) was terminated when more than 20% of its gross receipts in 1962 consisted of so-called "personal holding company income" within the meaning of Section 1372(e) (5) of the Code. The Tax Court ruled against the taxpayer. 52 T.C. 299 (1969).

The facts were stipulated and were stated by the Tax Court as follows:

"Petitioner, a corporation organized under the laws of the State of Michigan, had its principal place of business at 601 Townsend Avenue, Lansing, Michigan, at the time the petition was filed. It is engaged in the business of operating a commercial radio broadcasting station under the call letters 'WILS.' Petitioner filed its income tax return for 1962 on the basis of a calendar year, using the accrual method of accounting.

"On December 1, 1958, petitioner elected, in accordance with the provisions of section 1372(a), not to be subject to the corporate income tax for the year 1958, and met all the requirements of that section. From January 1, 1958, through December 31, 1964, this election was not terminated by formal revocation or through the addition of new shareholders who failed to consent to the election. For each of the years 1958 through 1964, petitioner filed a Form 1120–S, U. S. Small Business Return of Income, with the district director in Detroit, Michigan.

"During 1962 petitioner owned 53.-625 percent, 21,450 shares, of the stock of Chief Pontiac Broadcasting Company (hereinafter Chief Pontiac), with a cost basis of $21,450. Pursuant to a plan of complete liquidation adopted in accordance with the provisions of section 337, Chief Pontiac sold substantially all of its assets for cash on October 15, 1962, and thereafter distributed its cash and remaining assets to its shareholders in complete liquidation. Petitioner received cash liquidating distributions of $187,687.50 on October 19, 1962, $32,175 on April 10, 1963, and $13,541.72 on May 28, 1963. At the time of the final liquidating distribution petitioner surrendered its Chief Pontiac stock, and, on May 10, 1963, Chief Pontiac filed a certificate of dissolution with the Michigan Corporation and Securities Commission.

"The return filed by petitioner for 1962 reported gross receipts and other income as follows:

| | |
|---|---|
| Gross Receipts ....... | $569,048.19 |
| Interest on U.S. Obligations .............. | 5,552.59 |
| Rent ............... | 1,689.10 |
| Net Long Term Capital Gain .............. | 166,237.50 |
| Other Income ........ | 8,971.04 |
| | |
| Total Income | $751.498.42 |

"The net long term capital gain of $166,237.50 represented the liquidating distribution received from Chief Pontiac adjusted for the stock's cost basis of $21,450."

It was undisputed that more than 20% of taxpayer's income for 1962 was derived from the liquidating distribution on its Chief Pontiac stock and its interest and rental receipts.

When taxpayer qualified for Subchapter S benefits, it was relieved of corporate income tax, but its gains or losses were reportable pro rata by its shareholders. This operated to prevented the double taxation effect resulting from the corporate status. However, the statute contained strict limitations on this privilege, one of which limitations is contained in Section 1372(e) (5) providing for termination of Subchapter S treatment if more than 20% of taxpayer's gross receipts was from "personal holding company income," [1] *i.e.,* income "derived from royal-

ties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities."

Taxpayer contends that the liquidating distribution which it received on its Chief Pontiac stock was not derived from a sale or exchange of such stock within the meaning of Section 1372(e) (5).

It seems to us that taxpayer is inconsistent in making such a claim because it reported the distribution on its income tax return as a long term capital gain. The only basis for capital gain treatment of the distribution is Section 331(a) (1) of the Code, which provides:

"Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock." [2]

The Treasury Regulations under Subchapter S provide that the provisions of Chapter 1 of the Code, which includes Section 331(a) (1), are applicable to Subchapter S unless "inconsistent." Section 1.1372–1(c). No inconsistency has been shown.

Section 331(a) (1) of the Code and Section 1372(e) (5) are therefore in pari materia and should be construed together.

If the distribution is not to be treated as a sale or exchange, then it would have to be taxed as a dividend. The result would be the same.

In our opinion, the decision of the Tax Court is correct and it is affirmed.

---

1. The term "personal holding company income" was changed in 1966 to "passive investment income" in order to distinguish it from "personal holding income" as that term is used in Section 543. The amendment did not make a change in the substance of the code section. See § 1372(e) (5) as amended by Section 3(a) of Pub. Law 89–389, approved April 14, 1966. 1966 U.S.Code Cong. & Adm.News, p. 2160.

2. The Senate Finance Report accompanying the Act states:

"A liquidating dividend is, in effect, a sale by the stockholder of his stock to the corporation; he surrenders his interest in the corporation and receives money in place thereof. Treating such a transaction as a sale and within the capital gains provisions is consistent with the entire theory of the Act and, furthermore, is the only method of treating such distributions which can be easily administered." (S.Rep.No.398, 68th Cong., 1st Sess., p. 11 (1939–1 Cum.Bull. (Part 2) 266, 274.))