*Decision will be entered under Rule 50.*

PAULA CONSTRUCTION COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1058–70. Filed September 28, 1972.

*Louis G. Shushan,* for the petitioner.
*A. A. Simpson, Jr.,* for the respondent.

SIMPSON, *Judge:* The respondent determined deficiencies in the petitioner's Federal income tax of $14,606.34 for 1965 and $14,985.76 for 1966. He has also determined additions to the tax under section 6651 (a), I.R.C. 1954,[1] of $2,190.95 for 1965 and $749.29 for 1966. Two

---

[1] All statutory references are to the Internal Revenue Code of 1954.

issues remain for our decision: (1) Whether a corporation, whose status as a small business corporation has terminated, is entitled to deduct as compensation portions of distributions made to shareholders, even though such distributions were not treated as payments of compensation; and (2) whether the petitioner is liable for additions to the tax for failing to file timely returns.

### FINDINGS OF FACT

Some of the facts were stipulated, and those facts are so found.

The petitioner, Paula Construction Co. (PCC), had its principal office in New Orleans, La., at the time of filing the petition in this case. For the years 1965 and 1966, PCC filed U.S. Small Business Corporation Return of Income (Form 1120-S) with the district director of internal revenue, New Orleans, La. PCC maintained its books and records and filed its income tax returns according to the cash method of accounting based on the calendar year.

PCC, a Louisiana corporation, was organized in 1958 for the principal purpose of engaging in the construction business. Throughout its history, its stock has been owned as follows:

| Stockholder | Offices held | Percent of stock owned |
| --- | --- | --- |
| Anthony P. Abraham (Anthony) | President | 50 |
| Wilson P. Abraham (Wilson) | Vice President | 45 |
| Margaret H. Abraham (Margaret) | Secretary and treasurer | 5 |

On November 28, 1958, PCC elected to be taxed as a small business corporation (a subchapter S corporation) under section 1372. From such time through 1967, John Wooten has been the certified public accountant for PCC, Anthony, and Wilson. Prior to the election, Mr. Wooten, Anthony, and Wilson discussed the advantages and disadvantages of subchapter S treatment. These discussions were continued on and off through 1965 and 1966. Mr. Wooten advised them that as long as PCC remained eligible under subchapter S, the tax treatment of a payment of a dividend or a payment of compensation would be the same—a shareholder of PCC was taxable on any dividends he received and his share of the undistributed taxable income of PCC, and although a payment of compensation would reduce the taxable income of PCC, such a payment would be taxable to him as compensation.

On June 12, 1964, PCC sold its interest in the Chateau Carre Apartments, an apartment building it had erected, for $1,816,964.19. The purchaser assumed a mortgage on the property, and for its equity, PCC was to be paid in installments that bore interest. On March 1, 1965, PCC received payments totaling $46,720, including $9,720 as

interest. Such amounts constituted PCC's total gross receipts for 1965; therefore, more than 20 percent of its gross receipts in that year were derived from the interest, and it no longer qualified as an electing small business corporation for 1965 and succeeding years.

In 1965, PCC distributed $29,700.97 to its stockholders. Of such amount, Anthony received $14,850.48; Wilson received $13,365.45; and Margaret received $1,485.04. For 1965, PCC's taxable income was $43,971.55, of which $21,985.77 was includable in the income of Anthony, $19,073.69 in the income of Wilson, and $2,912.09 in the income of Margaret.

In 1966, PCC distributed its entire taxable income of $44,762.01 to its stockholders. Anthony received $22,381.01, Wilson received $20,142.90, and Margaret received $2,238.10.

Anthony and Wilson performed substantial and valuable services for and on behalf of PCC in connection with the construction, financing, and sale of the Chateau Carre Apartments. Neither the petitioner's books and records nor its corporate minutes contain any reference to salaries, or the possibility of salaries, being paid to Anthony, Wilson, or Margaret from the time of its incorporation up to and including the year 1966. Also, the small business corporation returns, prepared by Mr. Wooten and filed by the petitioner for 1965 and 1966, contain no reference to any deductions for salaries and wages. Nor do these returns contain any reference to any deductions for compensation paid to officers. The petitioner's 1965 and 1966 State of Louisiana Domestic Corporation returns, also prepared by Mr. Wooten, contain no deduction for salaries, wages, or compensation of officers.

The individual income tax returns filed by Anthony and Wilson for the years 1965 and 1966 indicate no salary was received from the petitioner. The distributions received by them in those years were reported as distributions from a subchapter S corporation.

The parties have agreed that if portions of the distributions made to Anthony, Wilson, and Margaret may be treated as compensation for services rendered, PCC is entitled to salary deductions of $27,000 for each of the years 1965 and 1966—$15,000 for Anthony and $12,000 for Wilson.

For the years 1965 and 1966, PCC filed returns on Form 1120-S as a small business corporation, which were prepared by Mr. Wooten. The officers of PCC and Mr. Wooten were unaware at that time that the corporation no longer qualified as a subchapter S corporation. There is no evidence as to when PCC delivered its books and records and other necessary information to Mr. Wooten for the preparation of such returns. It was his practice, after the preparation of the returns, to return them, within 1 to 6 days after he approved them, to PCC to be

signed by the corporate officers and filed by them. The return for 1965 was signed by Mr. Wooten on April 6, 1966, signed by Wilson on May 16, 1966, mailed by him on the same day, and received by the respondent on May 17, 1966. The return for 1966 was signed by Mr. Wooten on March 1, 1967, signed by Wilson on March 15, 1967, mailed by him on March 21, 1967, and received by the respondent on March 24, 1967.

OPINION

Two issues are presented for decision: (1) Is PCC entitled to deduct as compensation portions of the distributions made to its stockholder-officers during years for which its status as a subchapter S corporation was involuntarily terminated? (2) Is PCC liable for additions to the tax under section 6651(a) for its failure to file timely corporate income tax returns?

The petitioner claims deductions for the payment of compensation with respect to portions of disbursements made to its two major stockholder-officers in the years 1965 and 1966. The burden of proof rests upon the petitioner. Rule 32, Tax Court Rules of Practice; *Botany Mills* v. *United States*, 278 U.S. 282, 292 (1929); *Electric & Neon, Inc.*, 56 T.C. 1324, 1340 (1971). Because Anthony and Wilson, with respect to whom the deductions are claimed, were in complete control of the corporation's affairs, close scrutiny must be given to the relevant facts in order that we may determine whether the disbursements were payments of compensation or distributions of earnings. *Northlich, Stolley, Inc.* v. *United States*, 368 F. 2d 272, 278 (Ct. Cl. 1966); *Anthony Mennuto*, 56 T.C. 910, 921 (1971); *Ben Perlmutter*, 44 T.C. 382, 401 (1965), affd. 373 F. 2d 45 (C.A. 10, 1967).

Section 162(a)(1) allows a deduction for the payment of reasonable compensation for services when incurred as an ordinary or necessary business expense during the taxable year. The regulations further provide that "The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services." Sec. 1.162–7(a), Income Tax Regs. The parties have agreed that Anthony and Wilson performed substantial services for PCC prior to 1965 and that if PCC is entitled to treat any amount as compensation for the years 1965 and 1966, $27,000 would be a reasonable deduction for each of such years. Therefore, the issue is limited to whether parts of the distributions in 1965 and 1966 were made purely for services rendered.

It is now settled law that only if payment is made with the intent to compensate is it deductible as compensation. *Charles McCandless Tile Service* v. *United States*, 422 F. 2d 1336, 1339 (Ct. Cl. 1970); *Northlich, Stolley, Inc.* v. *United States, supra* at 278; *Irby Construction*

*Co.* v. *United States*, 290 F. 2d 824, 826 (Ct. Cl. 1961) ; *Electric & Neon, Inc., supra* at 1340 ; *Klamath Medical Service Bureau*, 29 T.C. 339, 347 (1957), affd. 261 F. 2d 842 (C.A. 9, 1958), certiorari denied 359 U.S. 966 (1959) ; *Twin City Tile & Marble Co.*, 6 B.T.A. 1238, 1247 (1927), affd. 32 F. 2d 229 (C.A. 8, 1929). Whether such intent has been demonstrated is a factual question to be decided on the basis of the particular facts and circumstances of the case. *Electric & Neon, Inc., supra* at 1340. On the basis of the record in this case, we conclude that the petitioner has not demonstrated the requisite intent to be entitled to the deduction.

Aside from the fact that substantial services were performed, nothing in the record indicates that compensation was either paid or intended to be paid. The petitioner does not claim that the entire disbursements constituted payments of compensation, and the disbursements in 1965 and 1966 contained no allocation between amounts claimed to be compensation and the amounts admitted to be distributions of profits. There was no corporate authorization for the payment of salaries, and in the books and records of the corporation, the disbursements were not treated as payments of compensation. The record contains no indication that any sums were reported on W-2 forms. Nor were there deductions for salaries claimed in either the Federal corporate return or the Louisiana Domestic Corporation return. Additionally, the total disbursements each year were distributed in proportion to stockholdings and included a distribution to Margaret, who performed no services for the corporation. Each recipient reported the amount received on his individual income tax return as a distribution of corporate profits and not a payment of compensation. In short, the petitioner has utterly failed to produce any evidence showing that the distributions were made with the intent of compensating Anthony and Wilson.

Anthony and Wilson did perform substantial and valuable services for PCC during prior years, and the petitioner argues that it could have treated part of the payments to Anthony and Wilson as compensation and that its failure to do so was because Anthony and Wilson, the officers of the corporation, and Mr. Wooten, its accountant, all believed that PCC qualified as a subchapter S corporation. However, the fact that Anthony and Wilson performed services establishes merely that they could have been paid compensation which would have been deductible; it does not establish that the distributions to Anthony and Wilson were intended as compensation. *Electric & Neon, Inc., supra* at 1341 ; *Klamath Medical Service Bureau, supra.* The question is what was the intent of the parties when the distributions were made to Anthony and Wilson. None of the evidence in-

dicates that at the time those payments were made they were intended to be compensation for services performed. It may be that if the officers and the accountant had realized that the petitioner no longer qualified as a subchapter S corporation, the corporate affairs would have been conducted differently, but we must decide the case in the light of what was done, not what might have been done. *Weiss* v. *Stearn*, 265 U.S. 242, 254 (1924) ; *Lansing Broadcasting Co.*, 52 T.C. 299, 303 fn. 7 (1969), affd. 427 F. 2d 1014 (C.A. 6, 1970), certiorari denied 400 U.S. 941 (1970) ; *Temple N. Joyce*, 42 T.C. 628, 636 (1964). In *Electric & Neon, Inc., supra*, it was argued that payments were not treated as compensation because of a mistaken belief that they constituted loans. However, we held that a case had to be decided on the basis of what was actually done, and that even though the parties were mistaken, the treatment of the payments could not be changed retroactively. Cf. *Freeman* v. *Commissioner*, 303 F. 2d 580 (C.A. 8, 1962), affirming 36 T.C. 779 (1961). There is no basis for distinguishing that case from the one before us. Moreover, on March 1, 1965, the petitioner received the payment of interest that caused the termination of its status as a subchapter S corporation; thus, at the time the distributions were made, the officers and the accountant should have realized that the corporation no longer qualified.

In *Bramlette Building Corp.*, 52 T.C. 200 (1969), we had before us a similar situation. A corporation inadvertently and unknowingly lost its status under subchapter S. It subsequently disbursed certain sums to its president, and the petitioner claimed that salary deductions should be allowed with respect to portions of such disbursements. However, we disallowed the claimed deduction for the reason that no amount was paid as compensation.

The decision of the Fifth Circuit, affirming our holding in *Bramlette*, has been cited by each party in this case to support its position. *Bramlette Building Corp.* v. *Commissioner*, 424 F. 2d 751 (C.A. 5, 1970). The petitioner relies on a statement in the circuit court's opinion to the effect that labels are not controlling. On the other hand, the respondent relies upon the conclusion by the Fifth Circuit and the criteria used for reaching such decision.

We agree that labels are not controlling, but our conclusion that the distributions were not compensation is not based on the labels used. Rather, we have examined all of the evidence to ascertain the intent of the parties in making the payments, and such an examination reveals clearly that there was no intent to pay compensation at the time the distributions were made. This conclusion is consistent with our decision in *Bramlette* and the decision of the Fifth Circuit. Accord-

ingly, we hold that the petitioner is not entitled to deduct any amount as compensation for the years 1965 and 1966.

The remaining issue to be decided is whether PCC is liable for additions to the tax under section 6651(a) arising from the late filing of returns for the years 1965 and 1966.

The petitioner was required by section 6012(a)(2) to file a return, and because it operated on the calendar year, such return was required under section 6072(b) to be filed on or before the fifteenth day of March following the close of the calendar year. Thus, for the year 1965, the return was due to be filed on or before March 15, 1966, and for the year 1966, on or before March 15, 1967. However, its return for 1965 was mailed on May 16, 1966, and received by the respondent on the following day, and its return for 1966 was mailed on March 21, 1967, and received by the respondent on March 24, 1967.

Section 6651(a) provides for an assessment of an addition to the tax where there has been a failure to file a tax return on or before its due date. To avoid the addition to the tax, the taxpayer must make an affirmative showing that a reasonable cause existed for the failure to file timely and that it was not the result of willful neglect. Merely demonstrating an absence of willful neglect does not meet the burden of proof required of the taxpayer. *Beck Chemical Equipment Corporation*, 27 T.C. 840, 858 (1957); *Wm. J. Lemp Brewing Co.*, 18 T.C. 586, 597 (1952). Reasonable cause exists when the taxpayer establishes that he exercised ordinary business care and prudence. *Southeastern Finance Co.* v. *Commissioner*, 153 F. 2d 205 (C.A. 5, 1946), affirming 4 T.C. 1069 (1945); *Beck Chemical Equipment Corporation, supra* at 858.

The petitioner argues that it relied upon its accountant. A taxpayer who has failed to file a timely return may demonstrate reasonable cause by showing that he acted in good-faith reliance upon the advice of an accountant to whom full disclosure of the relevant facts were made. *West Coast Ice Co.*, 49 T.C. 345, 351 (1968); *Safety Tube Corporation*, 8 T.C. 757 (1947), affd. 168 F. 2d 787 (C.A. 6, 1948). However, the application of this principle is limited to situations where the taxpayer does not know whether certain tax returns are required, and therefore must rely on its accountant to resolve a complex question. *Estate of Henry P. Lammerts*, 54 T.C. 420, 446 (1970), affirmed per curiam 456 F. 2d 681 (C.A. 2, 1972); *Estate of Frank Duttenhofer*, 49 T.C. 200, 205, 206 (1967), affirmed per curiam 410 F. 2d 302 (C.A. 6, 1969). Where the taxpayer is aware that a return is required, but delegates the responsibility of preparing it to a third person, the delegate's subsequent failure does not, alone, constitute reasonable cause. *Logan Lumber Co.* v. *Commissioner*, 365 F. 2d 846, 854 (C.A. 5, 1966),

affirming a Memorandum Opinion of this Court; *Inter-American Life Insurance Co.*, 56 T.C. 497, 511 (1971) ; *Estate of Frank Duttenhofer, supra* at 205.

In this case, there is no issue as to what return should be filed; the respondent accepted the Form 1120–S as a return, and his determination of a penalty was based on the failure to file such form on time. Thus, the petitioner cannot establish reasonable cause by arguing that it relied upon the advice of its accountant.

If the petitioner is contending that the failure to file timely returns was due to the accountant's delay in preparing them, that argument must also fail. In the first place, even if the failure was due to the accountant's delay in preparing the returns, such fact would not relieve the petitioner of the penalty. *Logan Lumber Co.* v. *Commissioner, supra* at 854; *Ferrando* v. *United States,* 245 F. 2d 582 (C.A. 9, 1957) ; *Estate of Frank Duttenhofer, supra.* Moreover, the petitioner has failed to show that the delay was the fault of the accountant. It is clear that the return for 1966 was prepared in time, and that the failure to file it on time was the fault of the petitioner; and it did not show when the necessary records and information were delivered to the accountant for the preparation of the return for 1965. Accordingly, we hold that the petitioner has failed to show that the failure to file the returns timely was due to reasonable cause.

In the petition, the petitioner challenged the respondent's determinations that it did not qualify as a subchapter S corporation for the years 1965 and 1966 and the method of computing the additions to the tax under section 6651(a). However, at trial and in its briefs, the petitioner apparently abandoned its position with respect to the first of such issues and offered no evidence or arguments in support of its position. Accordingly, we must decide this issue against the petitioner. *Peter Theodore*, 38 T.C. 1011, 1041 (1962) ; *Yellow Cab Co.*, 35 T.C. 791, 802 (1961). The parties have reached agreement with respect to the second of such issues.

*Decision will be entered for the respondent.*