ESTATE OF DOROTHY P. CRUTE, WILLIAM O. OSBORN, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
ESTATE OF CRUTE v. COMMISSIONER
Docket No. 7098-72
United States Tax Court
T.C. Memo 1974-240; 1974 Tax Ct. Memo LEXIS 77; 33 T.C.M. (CCH) 1073; T.C.M. (RIA) 74240; September 18, 1974, Filed. John L. Carey, for the petitioner. James J. McGrath, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency in the Federal estate tax of the Estate of Dorothy P. Crute in the amount of $1,357.70; and, an addition to the tax under section 6651(a) of the Internal Revenue Code *78 of 1954[1] in the amount of $8,238.67. Due to concessions by petitioner the only issue remaining for decision is whether the failure to file an estate tax return within the prescribed time was due to reasonable cause and not due to willful neglect. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Decedent Dorothy P. Crute (hereinafter referred to as Dorothy) died on July 25, 1969, a resident of the State of Connecticut. Hereinafter the Estate of Dorothy P. Crute will be referred to as either the estate or as petitioner. An initial determination was made that Dorothy's domicile was in Marshall County, Indiana. Accordingly her last will and testament was admitted to probate by that county's circuit court in Plymouth, Indiana. Under the terms of the will, William O. Osborn (Osborn), president of the State Exchange Bank, Culver, Indiana, was appointed executor of the estate. At the time of his appointment Osborn could claim vast *79 experience in the handling of probate estates both in his personal capacity and as president of the bank. During the period 1969 through 1971 alone Osborn had responsibility for the administration of approximately 80 estates. In light of these circumstances Osborn delegated many of the duties of administration of this estate to Ruby Haring (Haring). Haring was long in his employ and quite experienced in handling the routine matters of estate administration. In February or March 1970, Osborn retained a local independent accounting firm, Umbaugh and McQueen, to assist in petitioner's administrative work. [2] The firm, had a reputation for estate tax expertise, and Osborn had found their work satisfactory on a number of other occasions. [3]
As Dorothy died owning real estate in the State of Connecticut, Osborn found it necessary *80 to commence ancillary probate proceedings in Connecticut. Prior to commencement of these proceedings, however, Connecticut authorities began to question whether Dorothy had actually been a domiciliary of Connecticut rather than Indiana. [4] On or about January 28, 1971, the Connecticut State Tax Commissioner took the position that Dorothy was domiciled in Connecticut at the time of her death. Shortly thereafter, however, he withdrew this opinion pending further investigation of the matter. [5] As of May 9, 1972, this investigation was as yet incomplete and no executor had been appointed in Connecticut. [6]
Throughout this period of uncertainty Osborn or Haring kept in close contact with Myron Frasier (Frasier), a partner at Umbaugh and McQueen. Frasier was fully informed of the various problems of the estate, including the question of domicile. He had been supplied with all the necessary and relevant information *81 concerning the estate that had been available to Osborn. With this knowledge Frasier worked closely with Osborn and Haring in attempting to resolve these problems. On September 9, 1970, Treasury Form 704 "Estate Tax - Preliminary Notice" was prepared by Umbaugh and McQueen and filed. The Form 704 bore the typed comment form 704 not filed within two months because of difficulty resulting from assets in two states." On September 28, 1970, Frasier wrote a letter to an heir of petitioner expressing his opinion that the filing of the Federal estate tax return for the estate should be delayed until the ancillary proceedings were resolved with regard to the State of Connecticut. The Federal estate tax return was due on October 25, 1970. On or prior to this date, a return had not been filed, nor had an extension of time to file a return been requested. It was the opinion of Frasier that Osborn lacked the standing to file a return as executor or request a time extension. It was Frasier's belief that Osborn's responsibilities and duties as executor could eventually become the obligation of another executor in another state. Osborn and his delegate, Haring, were actively involved *82 in the proceedings pending in Connecticut and regarded the opinion of Umbaugh and McQueen in this matter as valid. Accordingly Osborn relied on the advice given and, as indicated, neither a return nor an extension was timely filed. On March 10, 1971, Osborn received a notice from the Internal Revenue Service that the estate tax return for petitioner was delinquent. Consequently, Umbaugh and McQueen prepared the return and forwarded it to Osborn for filing. The return was received by the Internal Revenue Service on March 22, 1971. By statutory notice dated June 16, 1972, respondent informed the executor of the estate that a deficiency in Federal estate tax had been determined in the amount of $1,357.70 as well as an addition to the tax in the amount of $8,238.67. OPINION The deficiency in this matter has been conceded by petitioner.The only issue, therefore, is whether the failure to timely file the Federal estate tax return was due to reasonable cause under section 6651(a). If so, the additions to tax determined by respondent are unwarranted. Section 6651(a) provides for an addition to tax equal to 5 percent of the tax for each month the failure to file a timely return *83 continues, not to exceed 25 percent in the aggregate, unless it is shown that such failure is "due to reasonable cause and not due to willful neglect." The burden of showing reasonable cause rests with the petitioner. Electric & Neon, Inc., 56 T.C. 1324, 1342 (1971), affd. 496 F.2d 876 (C.A. 5, 1974); C. Fink Fischer, 50 T.C. 164, 177 (1968); Rule 142, Tax Court Rules of Practice and Procedure. We hasten to add that merely demonstrating an absence of wilful neglect does not satisfy that burden. Paula Construction Co., 58 T.C. 1055, 1061 (1972), affd. per curiam, 474 F.2d 1345 (C.A. 5, 1973). For petitioner to prevail in this matter it must be established that the executor exercised "ordinary business care and prudence [7] and was nevertheless unable to file the return within the prescribed time * * *." [8] Section 301.6651-1(a) (3), Proced. & Admin. Regs. See also Estate of Henry P. Lammerts, 54 T.C. 420, 445 (1970), affd. as to this issue 456 F.2d 681, 683 (C.A. 2, 1972). We believe petitioner should prevail here. The facts of this matter [9] require a finding of reasonable cause under *84 section 6651(a). The evidence shows that Osborn was fully aware of the nature of his responsibilities as executor. Compare Estate of Henry P. Lammerts, supra. He actively participated in the administrative decisions of the estate. Compare Estate of Frank Duttenhofer, 49 T.C. 200 (1967), affd. per curiam 410 F.2d 302 (C.A. 6, 1969). Furthermore, when Osborn was faced with a problem which did not lend itself to easy resolve, he consulted with an accounting firm noted in the immediate area for their estate tax expertise and subsequently relied on their advice. [10] We think that under the circumstances of this case, these factors indicate Osborn's *85 actions were consistent with the ordinary business care and prudence standard noted above. [11]
Accordingly, we hold that the failure to timely file the estate tax return in this matter was for reasonable cause. The additions to tax under section 6651(a) are, therefore, unwarranted. Decision will be entered under Rule 155. Footnotes
1. All section references are to the provisions of the Internal Revenue Code of 1954 in effect during the taxable years in issue. ↩
2. The firm was retained to prepare the various forms required to be filed by an estate. ↩
3. During the years 1969, 1970 and 1971 the firm prepared approximately 12 to 15 Federal estate tax returns per year for estates in which Osborn had administrative responsibility, and 50 to 100 fiduciary income tax returns per year at the direction of Osborn. ↩
4. Osborn had contacted the appropriate Connecticut authorities as early as May of 1970. ↩
5. Osborn was notified to this effect by notice dated February 18, 1971. ↩
6. The primary estate was ultimately opened in Connecticut and Osborn was appointed executor in that State. ↩
7. "Ordinary business care and prudence" is the test to be applied in determining reasonable cause for the purposes of sec. 6651(a)↩. See sec. 301.6651-1(a) (3), Proced. & Admin. Regs. 8. The executor is required to file the Federal estate tax return within the prescribed time. See sec. 6018(a) (a) and sec. 6075(a). ↩
9. The issue presented is primarily a question of fact. Estate of Frank Duttenhofer, 49 T.C. 200 (1967), affd. per curiam 410 F.2d 302↩ (C.A. 6, 1969). 10. See also Haywood Lumber & Min. Co. v. Commissioner, 178 F.2d 769 (C.A. 2, 1950), modifying 12 T.C. 735↩ (1949). 11. We point out at this juncture that the scope of our inquiry does not extend to the correctness of the advice given by Umbaugh and McQueen. ↩