OLD COLONY INSURANCE SERVICE, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Old Colony Ins. Service, Inc. v. Commissioner
Docket No. 15761-79.
United States Tax Court
T.C. Memo 1981-177; 1981 Tax Ct. Memo LEXIS 569; 41 T.C.M. (CCH) 1258; T.C.M. (RIA) 81177; April 13, 1981. Charles R. Hembree and Philip E. Wilson, for the petitioner. Robert E. Touchton, for the respondent. EKMAN
MEMORANDUM FINDINGS OF FACT AND OPINION EKMAN, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year ended July 31, 1974 in the amount of $ 30,024.22. Petitioner having made certain concessions, the sole issue for decision is whether petitioner is entitled to deduct, pursuant to section 162(a)(1), amounts paid as salary to employees who were also shareholders of petitioner. FINDINGS OF FACT Some of the facts have been stipulated by the parties. The stipulation of facts and exhibits attached *570 thereto are incorporated herein by this reference. Petitioner is a Kentucky corporation incorporated during August 1964 with its principal place of business in Lexington, Kentucky. Its return for the taxable year ended July 31, 1974, was timely filed with the Internal Revenue Service Center in Memphis, Tennessee. Petitioner has been engaged in business as an insurance brokerage agency throughout its existence. A substantial portion of its business is the sale and service of horse mortality and related insurance. Petitioner also sells and services life, fire, and marine insurance. Since the incorporation of petitioner, William Carl (hereinafter Carl) and B. L. Kincheloe (hereinafter Kincheloe), have been its officers and directors and each owns 50 percent of its capital stock. Carl and Kincheloe have extensive experience in the insurance business and the horse mortality insurance business in particular. Prior to the incorporation of petitioner Carl was employed by the Kentucky Insurance Agency (hereinafter KIA) for approximately 10 years as an insurance salesman and underwriter and Kincheloe, who had approximately 14 years of insurance business experience prior to petitioner's *571 incorporation, was employed by KIA for 9 years as office manager, insurance salesman, and underwriter. When Carl and Kincheloe formed petitioner, they agreed that Carl's primary responsibility would be selling insurance and performing underwriting services, and that Kincheloe would undertake the managerial aspects of the business. During the taxable year Carl sold and serviced the majority of petitioner's insurance policies while Kincheloe performed most of the management functions. Kincheloe's responsibilities included the hiring, firing, and supervision of petitioner's employees and the maintenance of petitioner's books and records; Kincheloe also sold general casualty insurance, performed underwriting services for his and Carl's clients, and secured information necessary for underwriting property insurance. Carl, in addition to selling insurance, performed managerial tasks as needed and negotiated contracts with insurance companies with which petitioner did business. Pursuant to its contracts with various insurance companies, petitioner had authority to bind those companies to an acceptance of the insurance risk. Such binding authority is vital to the success of petitioner *572 since it enables petitioner's clients to be informed immediately that they are insured. Carl and Kincheloe were the only employees of petitioner authorized to make final binding underwriting decisions. During the taxable year petitioner had contracts with at least eight insurance companies under which it had binding authority. Those contracts were renegotiated annually by Carl and Kincheloe, and include credit terms, limits of permissible risk, commission levels, and contingent profits to be shared by petitioner and the particular insurance company. While the terms vary, the contracts generally provide for termination on 30 days' written notice by either party, and are frequently modified as to coverage and contingency clauses. One such contract for the placement of horse mortality insurance with Lloyd's Insurance Company of London, England was originally negotiated by Carl during 1965, and has been renegotiated by Carl annually. Carl travels to London approximately 3 times per year to maintain petitioner's arrangement with Lloyd's. A major factor in the success of petitioner is its ability to provide its clients in the horse business with a complete insurance package. Thus, *573 petitioner can provide, inter alia, mortality risk coverage on livestock, workmen's compensation for stable employees, fertility insurance and risk regarding expected foals. All such coverage can be contracted for by Carl and Kincheloe under petitioner's binding authority without the prior approval of other underwriters. During the taxable year ended July 31, 1974, Carl and Kincheloe produced virtually all of petitioner's insurance sales. [1] Pursuant to the general policy adopted when petitioner was incorporated, 50 percent of the commission received by petitioner from the sale of an insurance policy is ordinarily paid to the salesman who produced the sale. Exceptions to that general policy exist for certain large commissions and classes of insurance. For *574 the fiscal years 1965 through 1974, petitioner received commissions (gross receipts) from sales of insurance and paid commissions to Carl and Kincheloe as follows: Table 1
Year Ended
Gross Receipts
Commissions paid
July 31,
per Tax Return
to Carl
1965
$ 118,552
$ 51,076
1966
144,906
61,145
1967
175,183
74,101
1968
243,266
102,713
1969
285,635
114,763
1970
333,325
133,854
1971
366,153
143,983
1972
435,552
183,890
1973
495,760
187,834
1974
516,614
181,966
Year Ended
Commissions paid
Commissions retained
July 31,
to Kincheloe
by petitioner
1965
$ 2,115
$ 65,361
1966
8,325
75,436
1967
9,505
91,577
1968
15,169
125,384
1969
18,654
152,218
1970
18,796
180,675
1971
21,170
201,000
1972
22,316
229,346
1973
21,519
286,407
1974
23,220
311,428
In addition to commissions, Carl and Kincheloe were paid salaries by petitioner. On June 17, 1974, the board of directors of petitioner met to consider increasing the salaries of Carl and Kincheloe whose salaries at that time were each $ 2,867.75 per month. The directors of petitioner adopted a resolution whereby the respective salaries *575 of Carl and Kincheloe were increased $ 2,500 effective August 1, 1973, the start of the fiscal year here in question. [2]
*576 The following table reflects the salary per month and increases paid to Carl and Kincheloe by petitioner from 1964 through the taxable year ended July 31, 1974. Table 2
Salary per Month
Date of
Increase
Increase
per Month
Carl
Kincheloe
Initial
$ 350.00
$ 700.00
1/1/67
$ 1,000.00
1,350.00
1,700.00
6/1/68
350.00
1,700.00
2/1/69
300.00
2,000.00
2,000.00
9/1/69
500.00
2,500.00
2,500.00
2/1/72
137.50
2,637.50
2,637.50
2/1/73
158.25
2,795.75
2,795.75
8/1/73
32.00
2,827.75
2,827.75
8/1/73 *
2,500.00
5,327.75
5,327.75
2/1/74
40.00
5,367.75
5,367.75
The following table reflects petitioner's total income, gross sales commissions, and taxable income and earnings after taxes during each of the fiscal years from 1966 through 1974 as reported by petitioner on its returns for those years. Table 3
Year Ending
Total
Gross Sales
Taxable
Earnings after
July 31,
Income
Commissions
Income
Taxes
1966
$ 148,519
$ 144,906
$ 11,920
$ 9,298
1967
181,503
175,183
3,115
2,565
1968
252,118
243,266
20,831
16,044
1969
295,370
285,635
27,107
19,945
1970
346,872
333,325
27,868
20,532
1971
377,706
366,153
33,596
23,970
1972
450,304
435,552
43,737
29,545
1973
506,841
495,760
80,619
48,443
1974
539,216
516,614
4,776
3,805
*577 At the time petitioner was incorporated, Carl and Kincheloe, as directors, adopted a policy of paying themselves a minimum salary in order to accumulate sufficient operating capital to meet petitioner's business requirements. Petitioner needs substantial capital to pay its obligations to companies with which it places insurance coverage inasmuch as those obligations often come due prior to the receipt of premium payments from petitioner's clients. Carl and Kincheloe also adopted a policy of not paying dividends so as to accumulate the requisite operating capital. Petitioner has never declared or paid a dividend to its shareholders. OPINION
During the taxable year ended July 31, 1974, petitioner paid to Carl and Kincheloe salaries and commissions as follows: Salary
Commissions
Carl
$ 64,223
$ 181,966
Kincheloe
$ 64,223
$ 23,220
Petitioner deducted all of those amounts as compensation for services on its return for that taxable year. Respondent allowed as deductions for reasonable compensation the full amount of commissions but allowed only $ 34,223 to Carl and a like amount to Kincheloe as salary. The remaining $ 30,000 of the salary paid *578 to each officer-employee during the taxable year was disallowed as a deduction under section 162(a)(1) either as disguised distributions of profits or, alternatively, as unreasonable compensation for the services rendered by Carl and Kincheloe. Section 162(a)(1) allows as a deduction "a reasonable allowance for salaries or other compensation for personal services actually rendered" when such allowances are "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". In order to be deductible, compensation must be paid purely for services and be reasonable in amount. Section 1.162-7(a), Income Tax Regs.Electric and Neon, Inc. v. Commissioner, 56 T.C. 1324, 1340 (1971), affd. without opinion 496 F.2d 876 (5th Cir. 1974); Nor-Cal Adjusters v. Commissioner, 503 F.2d 359, 362 (9th Cir. 1974), affg. a Memorandum Opinion of this Court; Klamath Medical Service Bureau v. Commissioner, 29 T.C. 339, 347 (1957), affd. 261 F.2d 842 (9th Cir. 1958), *579 cert. denied 359 U.S. 966 (1959). Whether the payments were intended as compensation for services rather than a distribution of profits is a question of fact which must be decided on the basis of the particular facts and circumstances of the case. Paula Construction Co. v. Commissioner, 58 T.C. 1055, 1059 (1972), affd. without opinion 474 F.2d 1345 (5th Cir. 1973). The question of the reasonableness of the compensation is also a factual question. Charles Schneider & Co., Inc. v. Commissioner, 500 F.2d 148, 151 (8th Cir. 1974), cert. denied 420 U.S. 908 (1975), affg. a Memorandum Opinion of this Court; Levenson & Klein, Inc. v. Commissioner, 67 T.C. 694, 711 (1977); Pepsi-Cola Bottling Co. of Salina, Inc. v. Commissioner, 61 T.C. 564, 567 (1974), affd. 528 F.2d 176 (10th Cir. 1975). The cases contain a lengthy litany of factors relevant in determining whether amounts are paid purely for services and represent reasonable compensation, see Mayson Mfg. Co. v. Commissioner, 178 F.2d 115, 119 (6th Cir. 1949); *580 Miles-Conley Co. v. Commissioner, 173 F.2d 958 (4th Cir. 1974); Irby Construction Company v. United States, 154 Ct. Cl. 342, 290 F.2d 824 (1961); Home Interiors and Gifts, Inc. v. Commissioner, 73 T.C. 1142 (1980); Kennedy v. Commissioner, 72 T.C. 793 (1979), and no single factor is determinative. Mayson Mfg. Co. v. Commissioner, supra, Home Interiors and Gifts Inc. v. Commissioner, supra at 1156. Thus, petitioner's failure to pay dividends is but one factor to be considered. See Laure v. Commissioner, 70 T.C. 1087 (1978), Levenson & Klein, Inc. v. Commissioner, supra.However, when the case involves a closely held corporation with the controlling shareholders setting their own level of compensation as employees the reasonableness of the compensation is subject to close scrutiny. Perlmutter v. Commissioner, 44 T.C. 382, 401 (1965), affd. 373 F.2d 45 (10th Cir. 1967). Respondent's determination that the *581 disputed payments are not deductible is presumed to be correct and petitioner bears the burden of proving that determination erroneous. Botany Worsted Mills v. United States, 278 U.S. 282, 292 (1929); Rule 142(a), Tax Court Rules of Practice and Procedure.
Cognizant that the issue before us turns on an interpretation of the relevant facts, the parties argue earnestly that those facts support their respective positions. Respondent characterizes this case as one involving two controlling shareholders who reduce the taxable income of petitioner by means of an unwarranted increase in their salaries. Petitioner argues that Carl and Kincheloe, as the founders of petitioner and the fount from which petitioner's success flows, were inadequately compensated for services rendered in prior years and that the disputed salary payments were intended to and did compensate them for the services which they rendered during the year in question and during prior years. Respondent contends that the salary increases were a disguised distribution of the profits of petitioner and were not intended to be compensation for services. The factors urged by respondent in support of that *582 contention include: (1) the absence of an arms' length bargain between petitioner and Carl and Kincheloe concerning salary levels; (2) petitioner's failure to pay dividends; (3) the correlation between the respective salary levels and Carl and Kincheloe's stock ownership in petitioner; and (4) the fact that the increase in salary occurred near the end of petitioner's taxable year at which time the profits of petitioner were estimable. While we agree that these factors warrant close scrutiny, the testimony of Carl and Kincheloe, which we found to be forthright and credible, and the minutes of the board of directors meeting authorizing the salary increases convince us that the disputed amounts were intended to be paid as compensation for services rendered during the year in question and during prior years. It is well settled that an employer may deduct compensation paid for services rendered during prior years, Lucas v. Ox Fibre Brush Co., 281 U.S. 115 (1930), so long as the compensation is reasonable in amount. Lewis and Taylor, Inc. v. Commissioner, 447 F.2d 1074 (9th Cir. 1971). *583 Respondent contends that petitioner may not deduct compensation paid for services rendered during prior years because petitioner has failed to show undercompensation in those years. We find, on the basis of the record herein, that petitioner has established with sufficient certainty that Carl and Kincheloe were undercompensated in prior years and that the salary payments in question were intended to compensate them for their prior service to petitioner as well as to compensate them for the year in question. Having determined that the salary payments were intended as compensation for services, we are faced with the pure factual issue of whether the compensation paid to Carl and Kincheloe was reasonable in amount. Our careful review of the entire record in the framework of factors generally employed by courts in the resolution of such issues, draws us inexorably to the conclusion that the disputed salary payments constituted reasonable compensation for services rendered within the purview of section 162(a)(1). Petitioner is a relatively small company owned and operated by Carl and Kincheloe who are both experienced and capable insurance executives. During the taxable year and *584 throughout petitioner's existence they were responsible for all policy and management decisions, contract negotiations with insurance companies, customer service, underwriting decisions, and all other facets of petitioner's business. While the volume of petitioner's business has expanded, the scope of Carl's and Kincheloe's responsibilities has remained the same. They were responsible for substantially all sales of insurance by petitioner and thus have been directly responsible for generating petitioner's income. Concurrently, they were responsible for reducing petitioner's operating expenses thereby insuring petitioner's profitability. Petitioner, through Carl and Kincheloe, provides a specialized service to its clients in a highly proficient manner. Petitioner's ability to do so is dependent on and results from the contractual arrangements negotiated by Carl and Kincheloe. These services are not comparable to services provided by other personnel of petitioner and neither party presented evidence concerning the compensation paid for "like services by like enterprises under like circumstances". Section 1.162-7(b)(3), Income Tax Regs. Indeed, we note *585 that it is unlikely that truly comparable circumstances can be found inasmuch as we doubt that either Carl or Kincheloe could have been replaced. See Home Interiors and Gifts, Inc. v. Commissioner, supra.
Petitioner's board of directors determined that the salary payments in question constituted reasonable compensation for Carl's and Kincheloe's services to petitioner. Respondent, with exquisite precision, determined that while compensation to Carl and Kincheloe in the respective amounts of $ 216,189 and $ 57,443 was reasonable, every dollar of the $ 30,000 paid to each in excess of those amounts was not. We are unable to divine the method utilized by respondent in arriving at such a precise determination, but we do not adopt that determination as our own. Moreover, we find no impelling reason, on the basis of the present record, to substitute our judgment for that of petitioner's board of directors in determining what amount was reasonable compensation for the services rendered to petitioner by Carl and Kincheloe. Suffice it to say that we find petitioner's evidence "sufficiently more convincing" than that of respondent so that we hold that the compensation *586 paid by petitioner to Carl and Kincheloe is deductible in its entirety under section 162(a). See Buffalo Tool and Die Mfg. Co. v. Commissioner, 74 T.C. 441, at 452 (1980). Due to concessions by the petitioner, Decision will be entered under Rule 155. Footnotes
1. Petitioner employed one other insurance salesman, Mr. North, during the taxable year in question. Mr. North, who is the son-in-law of friends of Carl, began employment with petitioner upon graduation from college in 1973 and remained in petitioner's employ for approximately 30 months. Mr. North's insurance sales constitute an insubstantial part of petitioner's insurance sales during the taxable year in question.↩
2. The minutes of that meeting of petitioner's board of directors provides in part: The members of the Board present discussed an increase of salary to the corporation's officer-employees. It was brought out that the corporation was doing very well financially and that business was increasing substantially, which brought on increasing responsibilities to the two (2) officers of the corporation. Among some of the benefits obtained for the corporation by the officers were more favorable company contracts in fiscal year 1973-1974, and said contracts are anticipated to continue. It was further pointed out that the corporation was taking extremely selective risk assumptions which was very likely to increase profit-participations with various companies. Further, the past salary history of the corporation was reviewed and it was pointed out that the officers were paid $ 2,500.00 per month beginning in August, 1969, and were being paid $ 2,867.75 per month at the present time, the increase between these levels being due primarily to cost of living increases, which, in fact, did not keep up with the actual rise in the cost of living.
It was further pointed out that the corporation wrote policies in the approximate amount of $ 1,350,000.00 in 1969, whereas it appeared that fiscal year 1973-1974 would produce approximately $ 2,250,000.00 in policies written. Because of the above factors, the members of the Board present felt that a substantial increase in salary was justified and that same should be retroactive to August 1, 1973. Therefore, upon motion duly made, seconded and unanimously carried, the following resolution was adopted: "RESOLVED: That the present salary of William A. Carl and B. L. Kincheloe, respectively, officers and employees of the corporation, be, and the same hereby is, increased by the sum of $ 2,500.00 per month each, the same to be effective August 1, 1973, and thereby raising the salary level of the officers to $ 5,367.75 each per month."↩
*. The increase of $ 2,500 was approved by the Board of Directors on June 17, 1974 retroactive to August 1, 1973. Payments totalling $ 30,000 were made to each on July 16, 1974 for the retroactive period.↩