GENERAL ROOFING AND INSULATION CO., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
General Roofing & Insulation Co. v. Commissioner
Docket No. 13961-79.
United States Tax Court
T.C. Memo 1981-667; 1981 Tax Ct. Memo LEXIS 78; 42 T.C.M. (CCH) 1697; T.C.M. (RIA) 81667; November 17, 1981. Frank Townend, for the petitioner. Louis T. Conti, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in petitioner's income tax for 1974-1976 in the following amounts: Year
Deficiency
1974
$ 6,033.65
1975
17,689.04
1976
5,434.20
The issues for decision are: (1) whether petitioner is entitled to a section 162(a)(1)[1] deduction for amounts paid to its president, Doris M. *79 Royer, as a reasonable allowance for compensation for personal services actually rendered; and (2) if it is found that the amounts paid constitute reasonable compensation then whether certain amounts deducted in 1974 for the president's salary were paid within 2-1/2 months after the close of the taxable year as required for deductibility by section 267. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation and its attached exhibits are incorporated into this opinion by reference. Petitioner, a Pennsylvania corporation, maintained its principal office in Wilkes-Barre, Pennsylvania, at the time the petition in this case was filed. Petitioner primarily is employed as a subcontractor for insulation, roofing, waterproofing and dampproofing by general contractors involved in construction in the Wilkes-Barre, Pennsylvania area. During the peak business periods of the years in issue petitioner employed approximately 20 union employees and six administrators. The administrative personnel and the average number of hours *80 they worked each year during the years 1974-1976 were as follows: Position
Name
Hours per Year
President
Doris M. Royer
100
Vice President &
Secretary/Treasurer
Frank Townend
150
General Manager
Bernard Shupp
2,000
Office Manager
Mary A. Zabresky
2,000
Office Secretary
Marilyn C. Metroka
2,000
Accountant
Edward Kupstas
130
The salary and bonuses paid to the officers and staff during the years 1974-1976 are as follows: 1974
1975
1976
Doris M. Royer
Salary
$ 5,000
$ 5,000
$ 5,000
Bonus
16,000
38,000
25,000
Frank Townend
Fees
2,680
4,154
2,690
Bonus
12,000
26,000
15,000
Bernard Shupp
Salary
9,000
9,000
9,000
Bonus
14,074
30,000
18,000
Mary A. Zabresky
Salary
6,000
6,000
6,000
Bonus
14,000
30,000
18,000
Marilyn C. Metroka
Salary
5,460
6,000
6,000
Bonus
1,000
3,000
Edward Kupstas
Fees
1,200
1,200
1,200
Bonus
2,000
4,000
3,000
Of the amounts paid to Doris M. Royer in respect of 1974, $ 8,000 was not paid wihin 2-1/2 months following the close the company's 1974 tax year. Doris Royer ("Mrs. Royer") was paid a salary of $ 5,000 each year from 1964 *81 to 1976. She received the following bonuses: 1971
$ 3,000
1972
5,000
1973
11,000
1974
16,000
1975
38,000
1976
25,000
Petitioner gave substantial bonuses at the end of successful years. The financial health of the company and the bonuses it paid are portrayed in the following table: 1a
Net Income
Net Income
Before Bonuses
Total
After Bonuses
Year
Sales
(before tax)
Bonuses
(before tax)
1964
$ 519,785.40
$ (9,266.19)
$ (9,266.19)
1965
623,526.94
619.06 $ 200
419.06 1966
574,353.53
5,242.31 300
4,942.31 1967
345,129.94
7,257.22 300
6,957.22 1968
412,702.99
(59,254.67)
700
(59,954.67)
1969
547,696.86
44,140.31 8,000
36,140.31 1970
537,783.71
52,364.25 13,600
38,764.25 1971
448,090.07
41,952.93 16,600
25,352.93 1972
385,160.25
30,601.36 18,600
12,001.36 1973
479,591.38
60,268.06 37,200
23,268.06 1974
454,555.65
78,144.79 58,000
20,144.79 1975
640,300.60
193,547.95 129,000
64,547.95 1976
505,997.00
109,745.60 82,000
27,745.60 The stockholders of *82 the petitioner and their proportionate interests therein during the years 1974-1976 are as follows: Doris M. Royer
28 shares
58.3%
United Penn Bank,
Guardian of the Estate
of Catherine A. Elias
7.5 shares
15.6%
United Penn Bank,
Guardian of the Estate
of Wendy D. Elias
7.5 shares
15.6%
Treasury stock
5 shares
10.4%
Total
48 shares
No stock transfers occurred during the years 1974-1976. The last transfer of shares of petitioner's stock occurred on November 25, 1970. Petitioner paid no dividends during the years 1974-1976. Mrs. Royer completed her formal education upon graduation from high school. She was then employed as a teller at the Kingston Branch of the First Eastern Bank, N.A. She worked as head teller at the bank from 1941 until she retired from that position in 1950. Mrs. Royer's husband was one of the founders of petitioner when it was established in 1939. He became president in 1942 and remained president until his death in 1954. Prior to the death of her husband, Mrs. Royer was closely associated with him in the operation of petitioner's business. After her husband's death, Mrs. Royer became president, and she remained *83 the president through the years in controversy. Frank Townend, vice-president and secretary/treasurer of petitioner, was the attorney for the corporation. He also engaged in private law practice in Wilkes-Barre. In addition to serving as attorney for petitioner, Townend made legal and management decisions on questions referred to him by Bernard Shupp. Bernard Shupp, the general manager of petitioner, was involved in the roofing business since 1924. He has been employed by petitioner since September, 1958, when he was hired as assistant manager. On March 1, 1968, he was named general manager. He acted as the chief operating officer. He supervised the work of the men on the various jobs and purchased materials and equipment. He also estimated and bid on jobs on behalf of petitioner. Mary A. Zabresky, office manager, was responsible for the record keeping of the corporation, the supervision of accounts receivable and the payment of bills. Zabresky has been with the corporation since 1939. Edward Kupstas, the accountant for petitioner, reviewed the operation of the business each month and provided the officers with a monthly report, except for the months of January and *84 February. During the years 1974, 1975 and 1976, Mrs. Royer seldom worked at the corporate office or plant in Wilkes-Barre. Her principal residence during these years was in Pompano Beach, Florida. In 1974 and 1975, she resided at her home in Wilkes-Barre, Pennsylvania, from July until October. In 1976, she resided at her home in Wilkes-Barre from July until November. Shupp and Zabresky were responsible for the day-to-day management of petitioner. Mrs. Royer was not involved in day-to-day operations. Instead, she was contacted if an important decision had to be made. If Shupp or Zabresky encountered a problem or a situation which required an important decision then they contacted Townend, the vice-president, for advice. If Townend considered it advisable, he, in turn, consulted Mrs. Royer. Projects which exposed substantial amounts of petitioner's resources to a risk of loss required the involvement of Townend and, possibly, Mrs. Royer. Subcontractors, such as petitioner, acquire material and expend labor for a job prior to payment by the general contractor. Consequently, whenever a job was worth substantially more than $ 50,000, or when the customer was unknown *85 or known to be a poor credit risk, Shupp consulted Townend prior to committing the petitioner to the job. [2] No evidence was introduced to show how often, if at all, Mrs. Royer was consulted on these issues. Townend and, possibly, Mrs. Royer were consulted also when petitioner improved its facilities and when it acquired major equipment. During the years in issue, for example, petitioner's plant required a new roof with skylights and a large brick container for sheet metal. Because these alterations required large outlays of money, Townend was consulted. No evidence was introduced to show how often, if at all, Mrs. Royer was consulted on these matters. Mrs. Royer, with the vice-president, the officer manager and the accountant, determined the salary and bonuses paid to petitioner's officers and staff. They also determined the dividends, if any, distributed to the stockholders. Mrs. Royer fired the general manager in 1968 and selected Shupp as *86 his replacement. Mrs. Royer maintained fairly regular contact with petitioner. While in Wilkes-Barre she visited the corporate plant nearly everyday. When she came to the office she inquired where the men were working or questioned why they were not working. One time she asked Shupp why business had slowed down. He described several aspects of the business, including details of increasing costs and competition, to explain the nature of the slow-down. While in Florida Mrs. Royer telephoned the company office as follows: 1974
32 calls
1975
20 calls
1976
26 calls
Mrs. Royer contributed approximately $ 1,000 a year to the United Way in Wilkes-Barre during the period 1974-1976. OPINION Doris M. Royer was president of petitioner. During the years 1974-1976, petitioner paid her the following salary and bonuses: Year
Salary
Bonus
1974
$ 5,000
$ 16,000
1975
5,000
38,000
1976
5,000
25,000
Respondent determined that amounts paid to Mrs. Royer in excess of $ 5,000 per year constituted unreasonable compensation and disallowed deductions taken by petitioner in excess of that amount pursuant to section 162(a). [3]
*87 Respondent's determination is presumptively correct. Petitioner bears the burden of demonstrating that amounts in excess of $ 5,000 per year are reasonable compensation for services actually rendered by its president. Botany Worsted Mills v. United States, 278 U.S. 282 (1929). Bonuses paid to employees are deductible under section 162(a) if they are paid for services and if the bonus and the salary do not exceed a reasonable compensation for services rendered. Sec. 1.162-9, Income Tax Regs.
In determining whether the compensation paid was reasonable, the Court must examine all the facts and circumstances in the particular case. Charles Schneider & Co., Inc. v. Commissioner, 500 F.2d 148, 151 (8th Cir. 1974), affg. a Memorandum Opinion of this Court, cert. denied 420 U.S. 908 (1975). The relevant factors in determining reasonableness of compensation include: the employee's qualifications; the nature, extent and scope of the employee's work; the size and complexities of the business; a comparison of salaries *88 paid with the gross income and the net income; the prevailing general economic conditions; comparison of salaries with distributions to stockholders; the prevailing rates of compensation for comparable positions in comparable concerns; the salary policy of the taxpayer as to all employees; and in the case of small corporations with a limited number of officers the amount of compensation paid to the particular employee in previous years. * * * [Mayson Mfg. Co. v. Commissioner, 178 F.2d 115, 119 (6th Cir. 1949), revg. a Memorandum Opinion of this Court.] Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. 1142, 1155-1156 (1980). No single factor is decisive. We must consider and weigh the totality of facts and circumstances in arriving at our decision. Mayson Mfg. Co. v. Commissioner, supra.
Where an officer-shareholder who controls a corporation sets his or her own compensation, careful scrutiny is required to determine whether the alleged compensation is in fact a distribution of profits. Charles Schneider & Co., Inc. v. Commissioner, supra at 152; Logan Lumber Co. v. Commissioner, 365 F.2d 846, 851 (5th Cir. 1966), *89 affg. on this issue a Memorandum Opinion of this Court. Petitioner has failed to satisfy the burden of proving that payments to Mrs. Royer in excess of the amounts allowed by respondent constitute reasonable compensation for services actually rendered. No basis exists in the record to justify petitioner's claim that the services performed by Mrs. Royer in 1974-1976 exceeded $ 5,000 in value. The only actual service which the record shows Mrs. Royer performed was determining, in conference with other officers, salary, bonus and dividend payments. This conference apparently occurred only once a year. We do not believe that this service is worth more than $ 5,000 a year. Although petitioner stressed that Mrs. Royer bore ultimate responsibility and made the important decisions for the company, the record indicates only one decision made solely by Mrs. Royer. This decision, promoting Bernard Shupp to general manager and firing his predecessor, occurred in 1968. Shupp testified that he thought that Mrs. Royer made decisions for petitioner. However, he had no direct contact with her in the decision-making process because all problems and important questions were funneled through *90 the vice-president, Frank Townend. Neither Townend nor Mrs. Royer testified at trial. The fact that the persons with knowledge of Mrs. Royer's involvment with and responsibilities to petitioner failed to testify does not help sustain petitioner's burden of proof on this issue. Without specific evidence concerning Mrs. Royer's activities, it is impossible to determine their value. Mere generalizations, such as those contained in the record in this case, do not suffice. Petitioner, in its brief, asks us to take judicial notice of the "fact" that presidents of small corporations bear important responsibilities and that they properly are compensated for these services in an amount greater than $ 5,000 per year. Petitioner's claim is not a noticeable fact as the nature and amount of Mrs. Royer's responsibilities clearly is subject, in this case, to reasonable dispute. Rule 201, Federal Rules of Evidence. Petitioner must bear the consequences of the record which it created. Circumstantial evidence indicates that Mrs. Royer's services, such as they were, were of minimal value to petitioner. She did not assist in day-to-day management or in obtaining customers. [4] For two-thirds *91 of each year she was in Florida. She spent at most 100 hours per year working for petitioner. Although she often contacted petitioner, the evidence suggests that she merely was curious about her company and the safety or her investment in it rather than in control of its operations. From time to time she inquired where the men were, or why they were not working (illustrating a lack of familiarity with its operations) and would ask why business was slow during a particular period (indicating lack of extensive knowledge of the status of the petitioner and the economic factors involved in its operation). Increases in salary without an increase in responsibility also indicate unreasonableness in compensation. Pacific Grains, Inc. v. Commissioner, 399 F.2d 603 (9th Cir. 1968), affg. a Memorandum Opinion of this Court. Here, payments to Mrs. Royer increased from a range of $ 5,000 to $ 15,000 in the years *92 1964 to 1973, to a range of $ 20,000 to $ 43,000 during the years 1974 to 1976. No evidence exists to suggest that Mrs. Royer performed more services, or services of greater value to petitioner, during this latter period. Furthermore, petitioner introduced no evidence of compensation paid for comparable services rendered in similar circumstances. Although the limited nature of Mrs. Royer's activities may have made such a comparison difficult to establish, petitioner's failure to introduce any evidence in this area makes it more difficult for this Court to determine the reasonable value of Mrs. Royer's services. Pepsi-Cola Bottling Co. of Salina, Inc. v. Commissioner, 61 T.C. 564, 569 (1974), affd. 528 F.2d 176 (10th Cir. 1975). Petitioner presents us with a different situation than that in which high levels of compensation paid to the controlling shareholder-officer are sustained because the individual actively participated in making the company successful. See, e.g., Home Interiors & Gifts, Inc. v. Commissioner, supra. It is also different from cases in which a shareholder-officer worked only part-time for the corporation *93 but contributed valuable services. [5] instead, the evidence in the record indicates that Mrs. Royer performed minimal services and basically occupied but a passive position in the business, suggesting that her role was essentially that of investor rather than responsible employee. In this case we must say that compensation in excess of that allowed by respondent is unreasonable. See Langley Park Apartments, Sec. C, Inc. v. Commissioner, 44 T.C. 474 (1965). We would recharacterize the payments to Mrs. Royer as disguised dividends intended to compensate her for her proprietary interest in petitioner rather than salary for services rendered. The amounts were determined at the end of each year, based upon the amount of net income petitioner earned that year. While retroactive determinations of compensation are not per se distributions of profit, they may indicate an intent to distribute a disguised dividend. Klamath Medical Service Bureau v. Commissioner, 29 T.C. 339 (1957), *94 affd. 261 F.2d 842 (9th Cir. 1958), cert. denied 359 U.S. 966 (1959). [6]
An additional factor which weighs against the determination that the payments to Mrs. Royer were made solely in exchange for services is that petitioner did not pay dividends during these years of rising profitability. The absence of dividends raises the inference that some of the compensation was a distribution of profits. Charles Schneider & Co., Inc. v. Commissioner, supra.
Petitioner argues that the distribution of the end-of-the-year bonuses to the non-shareholder employees as well as to Mrs. Royer implies that the end-of-the-year payments to Mrs. Royer constituted compensation for services rather than a distribution of profits. The distributions to each employee, however, must be analyzed individually. Mrs. Royer's bonuses were not significantly different from those paid to employees occupying significant management services and rendering up to 20 times the number of hours of service per year to petitioner. The clear implication in light of the paucity *95 of evidence that Mrs. Royer played any significant executive role in petitioner's affairs is that the so-called bonuses paid to her actually represent a return on her investment. Having concluded that the reasonable compensation for Mrs. Royer's services did not exceed $ 5,000 for each taxable year before us, we must now decide whether any of the excess payments constitute reasonable compensation for prior years' services for which she was undercompensated. Petitioner argues that it intended, during the years 1974-1976, to compensate Mrs. Royer for undercompensation during the period 1964-1973. A corporation may deduct, as reasonable compensation, payments made to an employee for both current and undercompensated past services. Lucas v. Ox Fibre Brush Co., 281 U.S. 115 (1930); R.J. Nicoll Co. v. Commissioner, 59 T.C. 37 (1972). This general proposition of law is of no help to petitioner, however, based on the record in this case. In order for a corporation to be entitled to a deduction for compensation payments made to an employee for undercompensated *96 past services, it is necessary that the corporation establish both the amount of undercompensation, American Foundry v. Commissioner, 59 T.C. 231, 239 (1972), affd. on this issue 536 F.2d 289 (9th Cir. 1976), and the intent that the payments were compensation for past services. Perlmutter v. Commissioner, 373 F.2d 45, 48 (10th Cir. 1967). Petitioner failed to introduce evidence concerning the extent of past undercompensation or the intent, in 1974-1976, to compensate Mrs. Royer for past services. Consequently, petitioner failed to convince us that payments in excess of $ 5,000 per year during the years 1974-1976 constituted compensation for past, undercompensated services. Because we conclude that all payments in excess of $ 5,000 per year were unreasonable compensation, we do not have to decide the second issue, concerning the applicability of section 267. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the years in question.↩
1a. Losses are indicated by figures in parentheses.↩
2. Shupp estimated that the company had an average of three or four jobs exceeding $ 50,000 per year. Internal records for the year 1976 indicate, however, that General Roofing had only one job exceeding $ 50,000 in that year.↩
3. The relevant provisions of sec. 162 are: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (1) a reasonable allowance for salaries or other compensation for personal services actually rendered;↩
4. Although Mrs. Royer made charitable contributions to a charity in the Wilkes-Barre area, no evidence exists to suggest that those gifts benefitted the company.↩
5. See, e.g., R.J. Kremer Co., Inc. v. Commissioner, T.C. Memo. 1980-69; Kewaunee Engineering Corp. v. Commissioner, T.C. Memo. 1979-154↩.
6. See also R.J. Kremer Co., Inc. v. Commissioner, T.C. Memo. 1980-69↩.