WOESNER ABSTRACT & TITLE CO., BY MITCHELL M. WOESNER, PRESIDENT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Woesner Abstract & Title Co. v. Commissioner
Docket No. 7738-80.
United States Tax Court
T.C. Memo 1983-764; 1983 Tax Ct. Memo LEXIS 25; 47 T.C.M. (CCH) 722; T.C.M. (RIA) 83764; December 20, 1983. Mitchell M. Woesner, (President), for the petitioner. James M. Klein,Sheldon M. Kay, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency of $2,152 in the income tax due from petitioner for 1976. The sole issue for our decision in whether petitioner is entitled to deduct, under section 162(a)(1) [1] as compensation for services the amount paid to will Woesner during 1976 in excess of the amount allowed by respondent. *26 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference. Petitioner is a Wisconsin corporation with principal place of business at all pertinent times in Waukesha, Wisconsin. It was incorporated in 1949 and issued its 100 shares of common stock in equal amounts to Will Woesner ("Will") and his wife, Jeanne Woesner ("Jeanne"). On different occasions in subsequent years, Mr. and Mrs. Woesner made transfers of their stock to their son, Mitchell Woesner ("Mitchell"), and their daughter Ann Woesner, until by the end of 1974 the stock was held as follows: Stockholder
Number of Shares
Will Woesner
12
Jeanne Woesner
36
Mitchell Woesner
50
Ann Woesner
2
100
On January 1, 1975, Will surrendered his 12 remaining shares of stock to petitioner because of his desire to divest himself of ownership in the company and to gradually retire. He was not compensated for the surrender of his stock. Prior to some time in the first half of 1976, Will served as president of the corporation. Jeanne was its secretary-treasurer at all pertinent times. *27 Mitchell was vice-president until he succeeded his father as president in 1976. The three of them served as directors until Will's death in 1980 or 1981. As president Will's duties included overseeing the general operations of the company, soliciting business from customers, and making occasional title searches. He was paid a salary of $7,800 for the first six months of 1976. As vice-president Mitchell's duties included title searches and examinations. He did most of the title work of the company for 1976. He received a salary of $19,624 for 1976. Jeanne, as secretary-treasurer of the company, did clerical work. She did not receive a salary in 1976. Prior to June 26, 1976, Mitchell became president of the company and Will became chairman of its board of directors. On June 26, 1976, a special meeting of the stockholders and directors occurred. The minutes of this meeting state: At a special meeting held at the home of the Chairman of the Board on June 26th, 1976, it was decided that beginning July 1st, 1976, Will Woesner would no longer be paid a salary, but will receive for being Chairman of the Board and Director the sum of $200.00 per month. Other directors to *28 receive $5.00 per month which can be taken monthly or allowed to accumulate. Further, as Will Woesner is owed moneys not drawn from the Company, said sums will be paid in the balance of the year 1976 and into 1977 until paid, on a semi-monthly basis as will be financially feasable for the Company. The motion to this effect was made by said Will Woesner and Seconded by Mitchell M. Woesner, President, and was unanimously passed. All members of the Board of Directors being present and over 90% of the voting stockholders. On July 1, 1976 Will and the petitioner entered into a "contractor agreement" under which Will was to render such services as "Promotion, Title Examinations, Title Searches, or whatever is needed" by the petitioner. The compensation to be paid for these services was not stated in the agreement. Petitioner deducted $13,809.20 as director fees on its 1976 tax return. Respondent's audit disclosed that $11,960 of this amount was paid to Will in the last half of 1976 and the balance of $1,849.20 was paid to Jeanne. Respondent allowed the $1,849.20 paid to Jeanne and $1,200 of the amount paid to Will and disallowed the balance of $10,760 because the petitioner *29 had failed to show that it represented reasonable compensation. OPINION Section 162(a)(1) allows as a deduction "a reasonable allowance for salaries or other compensation for personal services actually rendered." Section 1.162-7, Income Tax Regs., provides in part: Compensation for personal services.--(a) There may be included among the ordinary and necessary expenses paid or incurred in carrying on any trade or business a reasonable allowance for salaries or other compensation for personal services actually rendered. The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services. * * * To be deductible under section 162(a)(1), the amount paid must be reasonable and the payment must be entirely for services actually rendered. Sec. 1.162-7(a), Income Tax Regs.; Nor-Cal Adjusters v. Commissioner,503 F.2d 359, 362 (9th Cir. 1974), affg. a Memorandum Opinion of this Court; Klamath Medical Service Bureau v. Commissioner,29 T.C. 339, 347 (1957), affd. 261 F.2d 842 (9th Cir. 1958), cert. denied 359 U.S. 966 (1959). Whether the requirements *30 for deductibility are met is a question of fact to be determined in the light of all relevant facts and circumstances. Pepsi-Cola Bottling Co. of Salina, Inc. v. Commissioner,61 T.C. 564, 567 (1974), affd. 528 F.2d 176 (10th Cir. 1975); Gem Jewelry Co., Inc. v. Commissioner,165 F.2d 991 (5th Cir. 1948), cert. denied 334 U.S. 846 (1948). The relevant factors to be considered, as stated by the Court in Mayson Mfg. Co. v. Commissioner,178 F.2d 115, 119 (6th Cir. 1949), revg. a Memorandum Opinion of this Court, include: [T]he employee's qualifications; the nature, extent and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with the gross income and the net income; the prevailing general economic conditions; comparison of salaries with distributions to stockholders; the prevailing rates of compensation for comparable positions in comparable concerns; the salary policy of the taxpayer as to all employees; and in the case of small corporations with a limited number of officers the amount of compensation paid to the particular employee in previous years. *31 * * * In making such a determination no single factor is decisive; rather, we must consider and weign the totality of facts and circumstances in arriving at a decision. Mayson Mfg. Co. v. Commissioner,supra.[2] Furthermore, in a case involving a closely held corporation where the controlling shareholders set their own compensation as executives, close scrutiny is necessary in order to be sure that the payment is not, in fact, a distribution of corporate profits. Miles-Conley Co. v. Commissioner,10 T.C. 754 (1948), affd. 173 F.2d 958 (4th Cir. 1949). [3]
Respondent's determination is presumptively correct, and petitioner has the burden of proving it erroneous by establishing that the payments sought to be deducted were reasonable in amount and were made for services actually rendered. Botany Worsted Mills v. United States,278 U.S. 282 (1929); Miller Box, Inc. v. United States,488 F.2d 695 (5th Cir. 1974), cert. denied 417 U.S. 945 (1974); *32 Rule 142(a). Petitioner in this case deducted a total of $11,960 as director fees paid to Will Woesner in the last six months of 1976. While fees paid by a corporation to a director are generally deductible, petitioner must show that the director fees paid to Will were reasonable payment for the services rendered by him. R.J. Reynolds Tobacco Co. v. United States,149 F. Supp. 889 (Ct. Cl. 1957), cert. Denied 355 U.S. 893 (1957); United Builders Supply, Inc. v. United States, an unreported case ( S.D.Miss. 1978, 78-1 USTC par. 9176, 41 AFTR2d 78-654). [4]
In an attempt to carry its burden, petitioner introduced minutes of a director's meeting held on June 26, 1976, and a copy of an agreement Will entered into with the petitioner on July 1, 1976. The agreement does not specify any amount of compensation to be paid Will and the minutes provide that he is to receive $200 per month, the amount allowed by respondent. Mitchell, the only witness for petitioner, was "not sure" how many director's *33 meetings Will attended in 1976 but stated that the board did not meet on a regular basis. The record contains no evidence of Will's activities in the last half of 1976 other than Mitchell's statement that his father promoted business, did some title work and negotiated an underwriting contract. Also there is no evidence of the amount of time and effort Will expended in the performance of these activities or of the value of such activities to the company. [5]
Mitchell testified that the payments represented in part either reimbursement for money that Will had loaned the corporation or were made to compensate him for services rendered in previous years. Payments for undercompensation in past years have been held to be deductible. Lucas v. Ox Fibre Brush Company,281 U.S. 115 (1930). [6] However, petitioner presented no evidence of undercompensation in any past year or of any advance made by Will. Furthermore, no attempt was made to allocate the $11,960 between *34 director fees, the alleged repayment of loans [7] and payment for past compensation. In fact, Mitchell, the only witness, testified that he did not know the amount of the fees, the past compensation or the loans. The agreement of July 1, 1976, is also of no help to petitioner because amounts allegedly paid as compensation do not become deductible merely because they were made in accordance with an agreement. Botany Worsted Mills v. United States,supra. Petitioner must still prove that the services were actually rendered and that any payment for such services was reasonable. Petitioner has failed to prove either. From the record before us it is apparent that Will Woesner rendered some services for petitioner during the last half of 1976 but the petitioner has failed to establish the nature and extent of such services or that their reasonable value was in excess of the amount allowed by respondent. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
2. See also Medina v. Commissioner,T.C. Memo. 1983-253↩. 3. See also Shotmeyer v. Commissioner,T.C. Memo. 1980-238↩.
4. See also Kummer Realty Co. v. Commissioner,T.C. Memo. 1974-44, affd. 511 F.2d 313↩ (8th Cir. 1975).
5. See Allison Corporation v. Commissioner,T.C. Memo. 1977-166; Alicia Ruth, Inc. v. Commissioner,T.C. Memo. 1969-47, affd. 421 F.2d 1393↩ (5th Cir. 1970).
6. See also Emmer v. Commissioner,T.C. Memo. 1978-102↩. 7. In any event the repayment of loans or advances would not be deductible except perhaps to the extent of interest.↩